# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **EDNA M. VILES**, | Case No. 3:14-cv-0534-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CAROLYN W. COLVIN**, Commissioner of Social Security, | |
| Defendant. | |

Tim D. Wilborn, Wilborn Law Office, P.C., P.O. Box 370578, Las Vegas, NV 89137. Attorney for Plaintiff.

S. Amanda Marshall, United States Attorney, and Ronald K. Silver, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Lars J. Nelson, Office of General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Edna Viles seeks judicial review of the final decision of the Commissioner of the

Social Security Administration ("Commissioner") denying her applications for Disability

Insurance Benefits ("DIB") and Social Security Income ("SSI") under the Social Security Act

("Act"). For the reasons set forth below, the Commissioner's decision is reversed and remanded for an award of benefits.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A. Plaintiff's Application

On January 24, 2011, Plaintiff applied for DIB and SSI, alleging disability beginning September 5, 2009, based on a combination of mental impairments, including post-traumatic stress disorder ("PTSD") and bi-polar disorder. AR 22, 173-81, 198. Plaintiff was born on August 28, 1966, and was 43 years old as of the alleged onset of disability and is presently 48 years old. Her applications were denied initially and on reconsideration; thereafter, she timely requested a hearing before an administrative law judge ("ALJ"). AR 110-19, 126-42. An administrative hearing was held on November 29, 2012, at which Plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). AR 34-54. On December 26, 2012, the ALJ found Plaintiff to be not disabled. AR 22-29. After the Appeals Council denied her request for review, Plaintiff filed a complaint in this Court. AR 1-4.

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay

or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

PAGE 4 – OPINION AND ORDER

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C.  The ALJ's Decision**

At step one of the five-step sequential evaluation process outlined above, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. AR 24. At step two, the ALJ concluded that Plaintiff's bipolar disorder, PTSD, and "alcohol dependence, in reported remission," were severe. *Id.* At step three, the ALJ ruled that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listings. AR 24-26.

The ALJ next assessed Plaintiff's RFC. The ALJ found that Plaintiff retained the capacity "to perform a full range of work at all exertional levels" but with the nonexertional limitation to "simple and repetitive tasks." AR 26.

At step four, the ALJ determined, based on the VE's testimony, that Plaintiff could perform her past relevant work as a housekeeper. AR 29. Thus, the ALJ found Plaintiff not disabled within the meaning of the Act. *Id.*

**DISCUSSION**

Plaintiff argues that the ALJ erred by: (A) finding her not fully credible; (B) rejecting the lay witness testimony of her friend and ex-boyfriend, Allen Webb; (C) improperly assessing medical evidence furnished by Daryl Birney, M.D., as well as certified counselor Luke Johnson and nurse practitioner Lori Mason; (D) failing to account for all of her limitations in the RFC; (E) not finding her presumptively disabled under listing 12.04 or 12.06 at step three; and (F) rendering an invalid step five finding.

**A.  Plaintiff's Credibility**

Plaintiff contends that the ALJ failed to articulate a clear and convincing reason, supported by substantial evidence, for rejecting her subjective symptom statements concerning the severity of her impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must state which "testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

At the hearing, Plaintiff testified that she left her last job as a housekeeper because it was too stressful and overwhelming because the voices in her head made it difficult for her to

function and complete her assigned tasks, and that those issues created problems with her coworkers. AR 40, 46-47. Plaintiff testified that she believes it is difficult for her to sustain work because she cannot remember what she is supposed to be doing, she has anger issues, she cannot stay on task, and she does not do well around other people. AR 42. Plaintiff lives in a trailer on a friend's property in a very secluded area, with only the friend's house nearby. AR 38, 45. As for daily activities, Plaintiff testified that she watches "quite a bit" of television, does not have the internet and plays simple games on her computer like solitaire "a little bit," does household chores, and acts as a "companion" to Jennifer, an adult woman with Down's Syndrome, who lives in the main house. AR 39, 42, 47. Jennifer takes care of herself, but she and Plaintiff are companions for one another. When Plaintiff cooks, because she often forgets to turn off the burners and had burned several pans, Jennifer checks to make sure the burners are off. AR 49. Plaintiff does not drive and does not have a driver's license. In the forms Plaintiff completed at the time of her application she indicated that she shops for groceries once a week for approximately one to two hours. AR 208. At the hearing, she testified that she no longer leaves the house much anymore, unless it is for a medical appointment, and that her friend picks up her prescriptions for her. AR 47-48.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but that her statements regarding the extent of these symptoms were not credible due to her daily activities, history of improvement with medication, and lack of support in the medical record. AR 26-28.

### 1. Daily living activities

The ALJ determined that Plaintiff's credibility was impaired by her activities of daily living. AR 28. Daily activities may be used to discredit a claimant where they either "are transferable to a work setting" or "contradict claims of a totally debilitating impairment." *Molina*

*v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012). Plaintiff's activities do not contradict her

claims of a disabling mental impairment. The fact that she can manage her self-care, cook as

long as someone checks to make sure Plaintiff did not leave the burners on, watch television,

play a simple computer game, spend time with a woman who lives on the same property,

perform light household chores, and briefly shop for groceries[1] does not contradict her testimony

that she has anger issues, problems with staying on task, memory issues, and difficulty in

sustained interaction with others. Further, the ALJ did not take into account the episodic nature

of bipolar disorder and the fact that Plaintiff will likely be able to function better on good days

and perform more daily living activities than she will on bad days. *See Schreiber v. Colvin*, 519

F. App'x 951, 961 (7th Cir. 2012) (finding that the ALJ's credibility determination regarding

daily activities did not take into account the episodic nature of bipolar disorder and was "not

ideal in this regard"); *Witt v. Colvin*, 2014 WL 6750329, at *8 (D. Or. Dec. 1, 2014) (finding that

the ALJ erred in discounting the plaintiff's credibility based on his activities of daily living, in

part because the ALJ failed to consider the episodic nature of bipolar disorder).

### 2. Improvement with medication

In addition, the ALJ found that Plaintiff's credibility was undermined by the fact that

Plaintiff's symptoms improved with medication. The U.S. Court of Appeals for the Ninth Circuit

recently reiterated its caution regarding relying on improvement in mental health symptoms as a

basis for rejecting a claimant's credibility:

> As we have emphasized while discussing mental health issues, it is
> error to reject a claimant's testimony merely because symptoms
> wax and wane in the course of treatment. Cycles of improvement

---

[1] The ALJ also noted the fact that Plaintiff "drives a car" and "plays games on the internet" were daily living activities that contradicted Plaintiff's testimony, but the record reflects that Plaintiff does not have the internet and plays only simple games like solitaire on her computer and that Plaintiff no longer has a driver's license and no longer drives.

> and debilitating symptoms are a common occurrence, and in such
> circumstances it is error for an ALJ to pick out a few isolated
> instances of improvement over a period of months or years and to
> treat them as a basis for concluding a claimant is capable of
> working.

*Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

Here, Plaintiff presented to Ms. Mason in January 2011 with significant symptoms, including suicidal and homicidal ideation, mood swings, psychotic tendencies, auditory hallucinations, trouble sleeping, major depressive symptoms, and manic symptoms. AR 289-95. Ms. Mason noted that Plaintiff was agitated, changed positions frequently, used dramatic gestures, was difficult to follow because her mood changed from "practically sobbing to laughing," spoke rapidly and loudly, and was quite digressive. AR 293. Ms. Mason also noted that she believed Plaintiff downplayed some of her symptoms in filling out the mood disorder questionnaire out of embarrassment and when they talked through the questions the questionnaire was "highly positive." AR 291. Plaintiff had a long history of taking medications prescribed for anxiety and mood disorders. Ms. Mason prescribed Plaintiff new medication.

Plaintiff reported significant improvement as a result of taking the new medication in May through September, 2011. AR 277-281, 327. In November, 2011, however, Plaintiff was not doing well. Her mood was unstable, she was irritable and argumentative, she had difficulty sleeping, and she had suicidal thoughts. AR 331.  Her medication was increased and she improved again by December 2011. AR 333. Thereafter, Plaintiff switched providers due to a change in her insurance status and did not restart mental health treatment until April 2012, when she reported to her new provider, Mr. Johnson.

In April 2012, Plaintiff's medication had been unchanged and Plaintiff reported that she was doing "really well" on her medication. Despite Plaintiff's impression that she was doing "really well," her symptoms demonstrated that she was not doing so well. Although Plaintiff did

not report symptoms of anxiety, Mr. Johnson noted that Plaintiff's "presentation suggests anxiety." AR 309. Plaintiff did report feeling sad and discouraged and having poor self-image. AR 305. She also reported that her boyfriend at the time caught her burning letters and she had no recollection of doing it. She was concerned that she might be engaging in other behavior without remembering. Additionally, she reported hearing voices two to three times a week, but noted that they all said positive things, unlike in the past where the voices tried to get her to harm herself. *Id.*

Plaintiff missed her appointment in May 2012. In June 2012 Mr. Johnson noted that Plaintiff could engage and express her feelings well and "seemed to benefit from therapy." AR 324. Plaintiff then missed her July 11, 2012 appointment but attended her July 26, 2012 appointment and reported that she was doing "really well" on her medication.[2] AR 337. Similar to her April 2012 appointment, despite Plaintiff's belief that she was doing "really well," her symptoms show that she was not doing that well. She reported at that time that she had mood swings, stopped driving so she would not feel tempted to drive off the road and hurt herself, had ongoing memory impairment, and felt distressed. AR 341. She set as a goal of treatment to "feel more even," less irritable, and to keep the voices away. *Id.*

In September and October 2012, Plaintiff transitioned off Abilify, which had caused a substantial amount of weight gain, and began taking other medication. During this time, Plaintiff experienced mood swings, less emotional stability, and problems with anger. *See* AR 356-60. She felt her medication was not working. In November 2012, Plaintiff had been "isolating"

---

[2] The summary of Plaintiff's statements regarding doing "really well" on her medication from the July 26, 2012 appointment are the same as the statements attributed to Plaintiff in her initial May 24, 2012 appointment chart notes. It is unclear whether Plaintiff reported the same information in July 2012, or whether the provider carried over the same general background information to the later report.

herself and was noted as having "minimal tears" in her session with Mr. Johnson. AR 364. She had, however, lost 25 pounds and physically was feeling much better.

It was error for the ALJ to discredit Plaintiff's testimony based on waxing and waning periods of improvement in the record. *Garrison*, 759 F.3d at 1017. Moreover, at the hearing Plaintiff responded, when asked if she received improvement from medication, "yes, very much." AR 47. She noted that she still had difficulties but that without the medication her symptoms would be much worse. AR 42. There is no evidentiary support that Plaintiff's testimony regarding her symptoms and the degree of improvement she received from medication was inconsistent or incredible.

### 3. Lack of objective medical evidence

An ALJ may not make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). Because the Court has found the other reasons relied on by the ALJ not to be supported by substantial evidence in the record, this reason is insufficient to support the ALJ's negative credibility finding.

Thus, the ALJ failed to provide clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's subjective symptom statements. The ALJ's credibility finding is reversed.

## B. Lay Witness Testimony

Plaintiff next asserts that the ALJ neglected to provide a germane reason to reject the lay testimony of Mr. Webb. Lay testimony regarding a claimant's symptoms or how an impairment affects a claimant's ability to work is competent evidence that an ALJ must take into account. *Molina*, 674 F.3d at 1114 (citation omitted). The ALJ must provide "reasons germane to each witness" in order to reject such testimony. *Id.* (citation and internal quotation omitted).

In March 2011, Mr. Webb filled out a Third-Party Adult Function Report in support of Plaintiff's claim. AR 222-29. Mr. Webb indicated that Plaintiff was independent in her self-care and activities of daily living. AR 223-25. He also did not endorse any difficulties in regard to Plaintiff's ability to follow instructions. AR 227. He did repeatedly note, however, that Plaintiff had problems getting along with others. AR 222, 226.

The ALJ "considered Mr. Webb's report" and found that, "to the extent he has knowledge of [Plaintiff's] functioning, his opinion generally supports the conclusion that [Plaintiff] is able to return to work at the [RFC] outlined above." AR 28. As such, the ALJ did not wholly discredit the lay witness testimony. Nevertheless, Plaintiff is correct that, because not all of the limitations described by Mr. Webb are reflected in the RFC, the ALJ rejected some of his statements without explicitly providing a reason for doing so. This was error.

## C.  Medical Evidence

Plaintiff argues that the ALJ erred by failing to provide legally sufficient reasons, supported by substantial evidence, for rejecting the medical reports of Dr. Birney, Mr. Johnson, and Ms. Mason.[3]

### 1.  Acceptable Medical Source Evidence

There are three types of acceptable medical opinions in Social Security cases: those from treating, examining, and non-examining doctors. *Lester v. Chater*, 81 F.3d 821, 830 (9th

---

[3] To the extent she asserts the global assessment of functioning ("GAF") scores assigned by these medical providers alone establish her entitlement to benefits, Plaintiff's argument is unavailing. While relevant, a "GAF score does not determine disability." *Davis v. Astrue*, 2012 WL 4005553, at *9 (D. Or. June 12), *adopted by* 2012 WL 3614310 (D. Or. Aug. 21, 2012) (citations omitted); *see also Skelton v. Comm'r of Soc. Sec.*, 2014 WL 4162536, at *11 (D. Or. Aug. 18, 2014) (explaining that the fifth and most recent edition of the Diagnostic and Statistical Manual of Mental Disorders abandoned the GAF scale for several reasons, including "its lack of conceptual clarity" and "questionable psychometrics in routine practice"). Instead, the dispositive inquiry is whether, based on the entire record, "the ALJ adequately accounted for [the claimant's] limitations in the RFC." *Davis*, 2012 WL 4005553, at *9.

Cir. 1995). To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. *Id.*

In April 2011, approximately three months after Plaintiff initiated care with Ms. Mason, Dr. Birney performed a one-time psychodiagnostic assessment. AR 273-75. His evaluation was based on Plaintiff's medical records, a clinical interview, and objective tests. *Id.* Dr. Birney diagnosed Plaintiff with bipolar disorder, PTSD, and alcohol dependence in sustained full remission. AR 275. Beyond stating broadly that her "concentration and delayed recall are compromised," the doctor did not provide a specific opinion regarding Plaintiff's functional capacities or ability to work.

The ALJ accepted diagnoses from Dr. Birney in evaluating step two and, accordingly, found that Plaintiff suffered from the medically determinable severe impairments of PTSD, bipolar disorder, and alcohol dependence in reported remission. AR 24. Additionally, the ALJ expressly "considered" Dr. Birney's report and afforded it "some weight." AR 27. However, the ALJ found that Dr. Birney's evaluation was not probative to the extent "it lack[ed] specificity regarding how [Plaintiff's] mental impairments affect her ability to function in a work setting." *Id.*

An ALJ may reject a medical report that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly rejected a medical opinion that failed to explain the extent or significance of a condition); *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995) (ALJ may

reject a medical opinion that includes "no specific assessment of [the claimant's] functional capacity" during the relevant time period); 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) ("[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s)[,] what you can still do despite impairment(s), and your physical or mental restrictions").

Therefore, because Dr. Birney's evaluation did not contain any functional limitations, the ALJ properly concluded that it was not probative as to what kind of work Plaintiff could perform despite her impairments. *See Corso v. Colvin*, 2014 WL 950029, at *10 (D. Or. Mar. 11, 2014) (affirming the ALJ's assessment of a doctor's report under analogous circumstances). In any event, the Court finds that ALJ formulated a RFC reasonably consistent with Dr. Birney's evaluation. AR 26. The ALJ's assessment of Dr. Birney's report is upheld.

### 2. Non-Acceptable Medical Source Evidence

While only "acceptable medical sources" can diagnose and establish that a medical impairment exists, evidence from "other sources" can be used to determine the severity of that impairment and how it affects the claimant's ability to work. 20 C.F.R. §§ 404.1513, 416.913. "Other sources" include, but are not limited to, counselors and nurse practitioners. 20 C.F.R. §§ 404.1513(d), 416.913(d); SSR 06-03p, *available at* 2006 WL 2329939. To disregard the opinion of an "other" or lay source, the ALJ need only provide a reason that is "arguably germane" to that witness. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001); *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010).

### a. Mr. Johnson

As noted above, Plaintiff initiated care with Mr. Johnson in April 2012. In November 2012, Mr. Johnson completed a check-the-box form prepared by Plaintiff's attorney. AR 365-67. This form was comprised of two sections: the first contained four subsections—

understanding and memory, sustained concentration and persistence, social interaction, and adaptation—and required Mr. Johnson to rank Plaintiff's functioning in each category as "not significantly limited," "moderately limited" or "markedly limited"; the second asked Mr. Johnson to delineate whether Plaintiff's impairments, in the broad functional categories of activities of daily living, social functioning, and concentration, persistence, or pace, were mild, moderate, marked, or extreme. *Id.* Definitions were provided for only two terms: "moderately limited" meant "[a]n impairment which seriously limits the ability to function in the designated area (would preclude sustained performance of jobs in which the function is a critical requirements of the job)" and "markedly limited" was defined as "[a]n impairment which seriously interferes with the ability to function independently, appropriately, and effectively in the designated area, and precludes the ability to perform the activity on a sustained basis (would preclude performance of jobs in which the function is more than a very incidental requirement of the job)." AR 365 (emphasis removed). Per the forms express instructions, however, these definitions did not apply to the second section. *Id.*

In the first section, Mr. Johnson reported that Plaintiff was "moderately" or "markedly limited" in a number of categories, including marked limitations in her ability to maintain attention and concentration for extended periods and work in coordination with others in close proximity without becoming distracted. Mr. Johnson indicated that Plaintiff was "moderately" limited in several categories relating to concentration and pace. AR 365-66. In the second section, Mr. Johnson opined that Plaintiff was not restricted in her activities of daily living and moderately impaired in maintaining social functioning and concentration, persistence or pace. AR 367.

The ALJ gave Mr. Johnson's report "some weight." AR 27. Specifically, the ALJ found "that Mr. Johnson's overall assessment regarding [Plaintiff's] activities of daily living, social functioning, and concentration, persistence, and pace, are supported by the record," but the ALJ found that some of Mr. Johnson's specific assessments, such as Plaintiff having moderate limitations in the ability to carry out simple instructions, not to be supported by treatment notes and Plaintiff's daily living activities. AR 27-28.

As discussed above, Plaintiff's daily living activities do not contradict her reported symptoms and they, similarly, do not contradict Mr. Johnson's opinion regarding Plaintiff's limitations. Regarding the ALJ's second reason, that Mr. Johnson's specific assessments are not supported by the record, the ALJ did not explain how Mr. Johnson's overall assessment is supported by the record but how Mr. Johnson's specific assessments were not supported by the record. To the contrary, the record contains treatment notes from Mr. Johnson and Ms. Mason describing Plaintiff's problems with persistence, concentration, and pace, and the opinion of Dr. Birney that Plaintiff's concentration was impaired. Additionally, the ALJ found Plaintiff to have marked difficulties in these areas and rejected the state consultants' opinions finding Plaintiff to have less limitation in persistence, concentration, or pace. The ALJ's conclusion that Mr. Johnson's opinion was not supported by Plaintiff's treatment notes is thus not supported by substantial evidence in the record.

### b. Ms. Mason

Ms. Mason treated Plaintiff approximately once per month between January and November 2011. The only record evidence from Ms. Mason consists of chart notes that document, in large part, Plaintiff's subjective symptom statements. AR 277-96, 327-34. While Ms. Mason did not provide any specific opinion as to Plaintiff's functional abilities, Ms. Mason remarked that "I do firmly believe that [Plaintiff] is disabled and cannot work in a meaningful

fashion for any sustained period of time, in view of her severe mood disorder and complex

PTSD" and that Plaintiff's "ability to work with the public or get along with people or keep a

regular schedule is not ever really going to improve." AR 282, 284. Ms. Mason opined that

Plaintiff would never be fully well and stable. AR 281.

    The ALJ did not explicitly discuss evidence from Ms. Mason in his decision and did not

provide any explanation for discounting Ms. Mason's opinions. This was error. *See*

*Garrison*, 759 F.3d at 1013-14.

## D.  RFC Assessment

    Plaintiff also asserts that the ALJ's RFC is erroneous because it does not account for her

marked limitation in concentration, persistence, or pace and moderate limitation in social

functioning. The RFC is the maximum a claimant can do despite her limitations. 20 C.F.R.

§§ 404.1545, 416.945. In determining the RFC, the ALJ must consider limitations imposed by all

of the claimant's impairments, even those that are not severe, and evaluate "all of the relevant

medical and other evidence," including the claimant's testimony. SSR 96-8p, *available at* 1996

WL 374184. Only limitations supported by substantial evidence must be incorporated into the

RFC and, by extension, the dispositive hypothetical question posed to the VE. *Osenbrock v.*

*Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

    The mild, moderate, or severe limitations, in the broad categories of activities of daily

living, social functioning, and concentration, persistence, or pace, that are assessed as part of the

psychiatric review technique "are not an RFC assessment but are used to rate the severity of

mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p. The

"RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more

detailed assessment by itemizing various functions." *Id.* This more detailed assessment is based

on all of the relevant evidence of record, including "statements about what you can still do made

PAGE 17 – OPINION AND ORDER

by nonexamining physicians and psychologists." 20 C.F.R. §§ 404.1513(c), 416.913(c); *see also* SSR 96-8p.

### 1.  Concentration, Persistence, or Pace

As discussed above, Mr. Johnson found Plaintiff to have marked limitations in some categories relating to concentration, persistence, and pace and moderate limitations in other categories. AR 366-67. Dr. Birney also noted impairment in relation to concentration. AR 275. In addition, Paul Rethinger, Ph.D., a state agency consulting source who reviewed the record in May 2011, assessed Plaintiff with moderate limitations in concentration, persistence, or pace. AR 60. Dr. Rethinger concluded, however, that Plaintiff could "understand and remember simple, moderately detailed instructions," "maintain simple, multi-step tasks for normal work periods," and "follow basic workplace routines and schedules." AR 61-62. Likewise, Dorothy Anderson, Ph.D., a consulting source, opined in September 2011 that Plaintiff was capable of simple, moderately detailed tasks and would have "[n]o problems with attendance or maintenance of pace and productivity over a regular work day/week." AR 85-88.

While the ALJ credited the opinions of Drs. Rethinger and Anderson, he nonetheless found that "the record warrants further limitations in concentration, persistence, or pace." AR 28. Thus, at step three, the ALJ assessed Plaintiff with "marked" limitations in concentration, persistence, or pace. AR 25. In so finding, the ALJ noted that Plaintiff nonetheless reported the ability to "handle stress and changes in routine" and "follow written instructions like a recipe." *Id.* In formulating the RFC, the ALJ limited Plaintiff to work involving only "simple and repetitive tasks." AR 26.

An ALJ's assessment may "adequately capture[] restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). The medical

testimony relied upon by the ALJ in *Stubbs-Danielson* found that the plaintiff retained the ability to perform simple tasks notwithstanding some evidence that the plaintiff had deficiencies in pace. *Id. Stubbs-Danielson* is inapplicable, however, to cases where the medical evidence identifies more significant restrictions related to concentration, persistence or pace. *See Brink v. Comm'r Soc. Sec. Admin.*, 343 F. App'x 211, 212 (9th Cir. 2009) ("The medical testimony in *Stubbs-Danielson*, however, did not establish any limitations in concentration, persistence, or pace. Here, in contrast, the medical evidence establishes, as the ALJ accepted, that Brink does have difficulties with concentration, persistence, or pace. *Stubbs-Danielson*, therefore, is inapposite."); *Graybeal v. Astrue*, 2011 WL 6019434, at *4 (D. Or. Nov. 2, 2011) ("However, where medical testimony identifies more significant restrictions related to concentration, persistence or pace, an ALJ errs by formulating an RFC limiting claimant only to simple, repetitive work.")

In this case, the medical evidence establishes, as was accepted by the ALJ, that Plaintiff has marked limitations in concentration, persistence, or pace. The issue, then, is whether the ALJ's RFC assessment, which limits Plaintiff to work at all exertional levels but allows only "simple and repetitive tasks" sufficiently translates the medical evidence into functional limitations in the RFC. The Court finds that the restriction to "simple and repetitive tasks," without more, is insufficient to incorporate Plaintiff's "marked" limitations in concentration, persistence, or pace. Although limiting a claimant to simple and repetitive tasks may, under some circumstances, properly incorporate "moderate" limitations in concentration, persistence, and pace,[4] "marked" limitations require more. *See, e.g.*, *Henson v. Colvin*, 2014 WL 6871187, at *10

---

[4] The Court notes that some courts have found that a restriction to simple and repetitive tasks does not adequately incorporate moderate limitations in concentration, persistence, or pace. *See, e.g.*, *Lee v. Colvin*, --- F. Supp. 3d ----, 2015 WL 64907, at *11 (D. Or. 2015); *Cavanaugh v.*

(E.D. Mo. Dec. 5, 2014) (finding the ALJ erred in limiting the plaintiff to simple and repetitive

tasks at all exertional levels because that limitation did not adequately incorporate the plaintiff's

marked problems in, among others, concentration, persistence, and pace); *Macauley v.*

*Colvin*, 2014 WL 2931828, at *8 (W.D. Wash June 27, 2014) (finding that a limitation to simple

and repetitive tasks adequately encompassed moderate restrictions on concentration, persistence,

or pace, and noting that the VE testified that marked limitations would result in the person not

being able to perform the jobs); *Pierre v. Astrue*, 2011 WL 1832789, at *9-10 (D. Ariz. May 13,

2011) (finding the ALJ erred in limiting the plaintiff to simple, unskilled, repetitive work

because the plaintiff had marked limitations in concentration, persistence, and pace); *see also*

*Brink*, 343 F. App'x at 212 (finding the ALJ erred in limiting the plaintiff to simple and

repetitive tasks because it did not adequately incorporate the plaintiff's moderate to marked

limitations in concentration, persistence, and pace).

Additionally, the opinions of Drs. Rethinger and Anderson, who both opined that

Plaintiff could remember and follow simple instructions, were discounted by the ALJ as not fully

incorporating Plaintiff's limitations in concentration, persistence, and pace. Accordingly, there is

no evidentiary basis for the ALJ to conclude an RFC limiting Plaintiff to simple tasks adequately

accounts for her marked difficulties in concentration, persistence, and pace. Moreover, the

limitation relating to simple and repetitive work does not incorporate Plaintiff's difficulty in

concentration and inability to focus for an extended period of time. Thus, the ALJ erred in his

RFC determination by failing properly to incorporate Plaintiff's recognized mental limitations.

---

*Colvin*, 2014 WL 7339072, at *4 (D. Ariz. Dec. 23, 2014) (gathering cases); *Graybeal*, 2011
WL 6019434, at *4; *Bentancourt v. Astrue*, 2010 WL 4916604, at *3 (C.D. Cal. Nov. 27, 2010).

### 2. Social Functioning

At step three, the ALJ found that Plaintiff was moderately limited in social functioning based on her self-reports of problems "with family, friends, neighbors, and employers," but noted that "she has never been filed or laid off because of problems getting along with other people" and "is a companion for a Down syndrome adult." AR 25. Nevertheless, the RFC's only non-exertional limitation did not address Plaintiff's limits in social functioning. AR 26.

Dr. Birney did not note any impairment in social functioning, relying on Plaintiff's self-reports that she "has friends that she sees weekly," was independent in her activities of daily living, and was living with her long-term significant other and ex-boyfriend, who was "still [a good] friend." AR 274-75. Mr. Johnson and Drs. Rethinger and Anderson, however, found that Plaintiff was moderately limited in this category but nonetheless capable of occasional contact with other employees and with the general public. AR 60-62, 85-88, 366-67. The ALJ erred by not including Plaintiff's limitations in social functioning in the RFC.

In posing the dispositive hypothetical question to the VE, the ALJ limited Plaintiff to "work involving simple, repetitive tasks [and] occasional contact with the public and coworkers." AR 51. The VE responded that "the housekeeping position would be consistent." *Id.* Because the VE testimony that formed the basis of the ALJ's finding of non-disability included consideration of an appropriate social restriction, the ALJ's error in omitting such a restriction in the RFC was harmless. *Compare* AR 26, with AR 51, 62, 88, 274-75, and 366-67; *see also Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (mistakes that are "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless); *see also Oliver v. Comm'r of Soc. Sec. Admin.*, 548 F. App'x 470, 470-71 (9th Cir. 2013) (ALJ did not commit reversible error in failing to include assessed functional

limitations in the RFC where "[n]either occupation [identified by the VE] require[d] any of the physical demands or environmental conditions implicated by [the] assessment").

**E.  Step Three Finding**

Plaintiff contends that the ALJ erred at step three in determining that her impairments did not meet or equal listings 12.04 or 12.06. To establish a listed impairment at step three, the claimant must demonstrate that "all of the specified criteria [are met]." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* Listing 12.04 pertains to affective disorders—*i.e.* depression— and listing 12.06 governs anxiety-related disorders. 20 C.F.R., Part 404, Subpart P, App'x 1, §§ 12.04, 12.06. To satisfy either, the claimant must meet either the A and B criteria or the A and C criteria. *Id.* While the A criteria vary, the B and C criteria of these listings are the same. *Id.* Both B criteria require the claimant to establish two of the following four restrictions: (1) marked restriction in activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of an extended duration. *Id.*

As noted above, the ALJ determined, at step three, that Plaintiff was mildly impaired in activities of daily living, moderately impaired in social functioning, and markedly impaired in concentration, persistence, or pace, with no episodes of decompensation. AR 25. As a result, the ALJ concluded that Plaintiff's "mental impairments, considered singly or in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06." *Id.*

Plaintiff argues that her and Mr. Webb's testimony, in conjunction with the medical reports of Dr. Birney, Ms. Mason, and Mr. Johnson, establish limitations equivalent to a marked restriction in social functioning. This argument is not persuasive. Mr. Johnson, Dr. Rethinger, and Dr. Anderson assessed Plaintiff as moderately limited social functioning, and Dr. Birney's

PAGE 22 – OPINION AND ORDER

report did not reflect any impairment in social functioning. AR 60, 85, 274, 367. The ALJ's determination that Plaintiff's social functioning is only moderately limited is supported by substantial evidence in the record. The record also does not demonstrate the existence of marked restriction in activities of daily living or repeated episodes of decomposition. Thus, the ALJ's conclusion that listings 12.04 and 12.06 were unmet is supported by substantial evidence in the record. The ALJ's step three finding is affirmed.

## F.  Step Five Finding

Finally, Plaintiff argues that the ALJ's step five finding is erroneous because the dispositive hypothetical question posed to the VE did not account for all of Plaintiff's limitations. This argument is well-taken. Because the ALJ failed to incorporate Plaintiff's marked limitations in concentration, persistence, and pace into Plaintiff's RFC and hypothetical posed to the VE, the ALJ erred in relying upon the VE testimony that Plaintiff could perform her past work as a housekeeper. *See Flores v. Shalala*, 49 F.3d 562, 570 (9th Cir. 1995) (finding that a hypothetical question posed to a vocational expert must "include all of the claimant's functional limitations, both physical and mental"); *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) ("If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the . . . testimony has no evidentiary value[.]" (citations and quotation marks omitted)).

## G.  Remand

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001) (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A remand for an

award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Id.* at 1100.

Here, no additional proceedings are necessary[5] because Plaintiff's counsel asked the VE whether a person with marked limitations in the ability to concentrate, meaning the person would be off task 20 percent of the time, would affect the VE's analysis. The VE testified that a person who is unproductive for whatever reason for 10 percent or more of the time is unemployable. AR 52. Thus, Plaintiff's marked limitations in concentration, persistence, and pace, render Plaintiff disabled. *See Henson*, 2014 WL 6871187, at *11 (remanding for an award of benefits where the plaintiff's marked restrictions in persistence, concentration, and pace were not properly incorporated into the RFC and the VE had testified that with such a marked limitation the plaintiff would be unemployable); *Delgado v. Astrue*, 2013 WL 786440, at *7 (D. Or. Feb. 28, 2013) (same).

## CONCLUSION

The Commissioner's decision is REVERSED and this case is REMANDED for an award of benefits.

**IT IS SO ORDERED**.

DATED this 25th day of March, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge

---

[5] Further proceedings may have been necessary to resolve the ALJ's errors in evaluating the evidence, but the Court need not analyze the impact of these errors because the ALJ's error in failing properly to incorporate Plaintiff's marked limitations in concentration, persistence, or pace, in light of testimony by the VE, results in a remand for benefits.